IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRANDON RICKELMAN, RYAN RICKELMAN
and WILLIAM RICKELMAN,

                      Plaintiffs,

v.

SECURIAN LIFE INSURANCE COMPANY,

                      Defendant.

OPINION AND ORDER

20-cv-1124-slc

---

Plaintiffs Brandon, Ryan and William Rickelman bring this action collectively to recover accidental death benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiffs challenge the denial by Securian Life Insurance Company of their claim under insurance policies issued to their father, Kevin Rickelman, who died on December 25, 2017. The parties have filed cross-motions for summary judgment.[1] As explained below, I find that the claims administrator's decision to deny plaintiffs' claim is rationally supported by the record. Accordingly, I will grant defendant's motion, deny plaintiffs' motion, and enter judgment for defendant.

UNDISPUTED FACTS

The material facts are undisputed:.

Kevin Rickelman was an employee of 3M Company and participated in a benefit program governed by the provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Defendant Securian Life Insurance Company is the insurer of the program's life and accidental death and dismemberment ("AD&D") coverage under two group

---

[1]Although Securian has styled its motion as a Motion for Judgment on the Administrative Record or on the pleadings, *see* dkt. 14, I have construed it as a motion for summary judgment.

insurance policies issued to 3M. Plaintiffs Brandon, Ryan and William Rickelman are Kevin's sons and are beneficiaries of those AD&D policies.

At approximately 7 a.m. on December 23, 2017, Kevin was found by a family friend on the floor of his home with his eyes open but not responsive. The friend alerted Kevin's son, William, who lived with him at the time; William called 911. Emergency responders arrived and transported Kevin by ambulance to River Falls Area Hospital in River Falls, Wisconsin. William provided the following information to medical staff: Kevin was a chronic alcoholic who had been drinking a lot lately; in the past week, he had become increasingly jaundiced, confused, weak, and unsteady on his feet, with recurrent falls; and Kevin was receiving chemotherapy treatment for non-Hodgkin's lymphoma, but William was unsure where. On physical examination, Kevin appeared "very jaundiced" with "highlighter yellow" skin color and yellow eyes (scleral icterus), suggestive of chronic liver disease. A head CT scan showed a large, acute subdural hematoma on the right side.

Laboratory tests revealed that Kevin was in acute liver and kidney failure. Among other things, he had very low platelet counts and a high INR[2] value (2-3 times higher than normal), indicating that he had an impaired ability to form blood clots and was susceptible to uncontrolled bleeding. Kevin's liver enzymes and bilirubin both were high, consistent with liver disease. He had blood in his urine, black stools indicative of bleeding in his upper digestive tract, and highly elevated BUN (blood urea nitrogen) and creatinine levels, evidencing kidney dysfunction. Kevin also had an abnormal EEG, which suggested a severe, diffuse brain

---

[2]"INR" is an acronym for "international normalized ratio." It is a calculation based on results of a prothrombin time test, which measures how long it takes for blood to clot. https://medlineplus.gov/lab-tests/prothrombin-time-test-and-inr-ptinr (last visited Oct. 21. 2021).

2

malfunction (encephalopathy). The emergency physician at River Falls concluded that Kevin's recent increased confusion and balance problems likely were caused by a combination of the hematoma and "hepatic encephalopathy," a condition in which brain function is impaired by the buildup of toxins in the blood due to severe liver disease. No alcohol was detected in Kevin's blood.

Kevin was transferred to United Hospital for an emergency neurosurgery consult. The neurosurgery department concluded that surgery was needed to drain Kevin's hematoma, but it was too risky, given the likelihood of uncontrolled bleeding posed by Kevin's other conditions, Kevin then was transferred to Regions Hospital, where his condition deteriorated and he was intubated. A kidney specialist opined that Kevin's prognosis was very poor, noting that he had severe kidney dysfunction in the setting of severe hyperbilirubinemia, severe liver disease, thrombocytopenia (low platelets), elevated INR and coagulopathy, and sepsis. Diagnoses at Regions included subdural hematoma, hepatic encephalopathy, acute renal failure, liver failure with hepatic coma, gastrointestinal hemorrhage, thrombocytopenia, elevated INR, aspiration pneumonia, and alcohol abuse.

After consulting with physicians, Kevin's family decided to remove care. He was extubated and died on December 25, 2017. No autopsy was conducted. Regions Hospital identified his "cause of death" as "Cardiovascular collapse/multisystem organ failure." On Kevin's death certificate, the medical examiner identified his "immediate" cause of death as "complications of subdural hematoma," with underlying causes of "closed head injury" and "fall to floor." "Other contributing conditions" were aspiration pneumonia, liver and renal failure, hypertension and non-Hodgkin's lymphoma. The medical examiner deemed Kevin's death an accident.

Kevin's adult sons filed a claim for AD&D benefits under the Securian policies. Under the terms of the policies, an accidental death benefit is payable if death "results, directly and independently from all other causes, from an accidental bodily injury which was unintended, unexpected and unforeseen." Further, the "bodily injury must be the sole cause" of death. The policies also contain a separate exclusion which states:

> In no event will we pay the accidental death or dismemberment benefit where the insured's accident, injury, loss, death or dismemberment is caused directly or indirectly by, results in whole or in part from or during, or there is contribution from . . . bodily or mental infirmity, illness, or disease.

Finally, the policies confer Securian with "the exclusive right and authority, in its sole discretion, to interpret the group policy and decide all matters arising thereunder," and specify that Securian's exercise of that authority shall be "conclusive and binding" unless its decision is shown to be arbitrary and capricious.

After obtaining Kevin's medical records, Securian consulted Maryam Shapland, M.D., to review them and evaluate the factors causing or contributing to his death. Dr. Shapland observed that the records noted "multiple factors" that contributed to Kevin's decline, including liver failure, hepatic encephalopathy, renal failure with uremia, head injury, aspiration pneumonia with sepsis and GI bleed. She opined that Kevin's subdural hematoma was likely from head trauma as well as the thrombocytopenia and elevated INR caused by his liver failure, which greatly increased his risk of bleeding. Finally, Dr. Shapland concluded that Kevin had been at significant risk of head injury, given his reported recurrent falls, confusion and weakness due to hepatic encephalopathy; dehydration; alcohol use; GI bleed; and pneumonia/sepsis.

Securian denied the Rickelmans' claim, finding that Kevin's subdural hematoma was not the "sole cause of his death" as required to be covered by the policy's definition of "accidental death." In addition, it found that Kevin's death was excluded from coverage because he had various contributing health conditions.

The Rickelmans administratively appealed Securian's decision, maintaining that an unintentional fall caused Kevin's death, as noted on the death certificate. They further denied that alcohol contributed to his fall, submitting affidavits from William Rickelman and the family friend who both averred that they had seen Kevin the night before his fall and he had not been drinking. William further averred that his father had not consumed any alcohol in the weeks before he was found on the floor in his home.

Securian consulted another physician, Dr. Marianne Cumming, M.D., to provide another review of Kevin's records. Like Dr. Shapland, Dr. Cumming concluded that multiple medical conditions contributed to Kevin's death, explaining that his alcoholic liver disease with encephalopathy contributed to an increased risk for fall and that his multiple medical conditions, including his liver failure and inability to clot blood, contributed significantly to his death. Securian affirmed its denial of benefits, and this lawsuit followed.

## ANALYSIS

The parties agree that this court must review Securian's decision to deny plaintiffs' claim for AD&D benefits under the "arbitrary and capricious" standard. *See, e.g., Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013) (when plan grants administrator discretionary authority to determine eligibility for benefits, court asks only whether

5

administrator's decision was arbitrary and capricious).  Under the arbitrary and capricious standard, a reviewing court overturns the decision only where there is an absence of reasoning to support it.  *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 864 (7th Cir. 2011) (citations omitted). The decision will be overturned only if it is "downright unreasonable." *Tegtmeier v. Midwest Operating Engineers Pension Tr. Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting *Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999)). *See also Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107–08 (7th Cir. 1998) ("Review under this standard is extremely deferential and has been described as the least demanding form of judicial review . . . It is not, however, without some teeth.").  Further, when review under ERISA is deferential, courts are limited to the information submitted to the administrator. *See Perlman v. Swiss Bank Comprehensive Disability*, 195 F.3d 975, 982 (7th Cir. 1999) (citing cases).

Plaintiffs argue that there was no rational basis for Securian to conclude that Kevin's death was not caused solely by an accident.  Although plaintiffs concede that Kevin suffered from a number of health conditions, and even that those conditions might have eventually killed him, they insist that the only condition that caused his death on December 25, 2017 was the subdural hematoma, which was caused by an accidental fall.  In support, plaintiffs rely exclusively on the death certificate.  As they point out, the medical examiner ruled Kevin's death an "accident," caused by complications of a subdural hematoma, the underlying cause of which was a closed head injury caused by a fall to the floor. Although plaintiffs acknowledge that the death certificate identified a number of "other contributing conditions" -- aspiration pneumonia, liver and renal failure, hypertension and non-Hodgkin's lymphoma – plaintiffs contend that

6

"these were listed as a catch all to describe Kevin's overall health, not as significant contributions to Kevin's death[.]"  Br. in Supp., dkt. 13, at 4.

Plaintiffs' argument is not persuasive.  They identify no evidence to support their conclusory assertion that the "other contributing conditions" listed on the death certificate did not *actually* contribute to Kevin's death, even though they were listed as having done so.  Certainly, that was not the conclusion reached by Dr. Shapland or Dr. Cumming, the two medical consultants upon whom Securian relied in reaching its claim determination.  As these doctors opined, Kevin's underlying conditions contributed to his death in two ways.  First, as a result of his diseased liver, internal bleeding and failing kidneys, he was encephalopathic and dehydrated, leaving him weak, confused, and prone to falls, as observed by his son William in the days before December 23, 2017.  This posed a significant and foreseeable risk of head injury.  Second, after injuring his head, Kevin's inability to form blood clots due to his liver failure contributed to the subdural hematoma, which in turn led to his death.

Nothing on the death certificate contradicts these opinions, which were reasonably based on all the available evidence.  To the contrary, the Medical Examiner's conclusion that Kevin's liver and renal failure were "other contributing conditions" to Kevin's death is consistent with that reached by Securian's experts.  Indeed, as Securian points out, even the fact that the Medical Examiner noted "fall to floor" as an underlying cause does not necessarily show that the fall itself was a pure "accident" independent of Kevin's health conditions:  Kevin may very well have collapsed as a result of his multi-system organ failure.

Plaintiffs' assertion that "a fall can cause organ failure" does not advance their position.  Dkt. #20, at 4.  Even if this lay observation might be true in general, it does nothing to show

7

that *Kevin*'s fall caused *his* organ failure. Plaintiffs do not identify a single piece of evidence in the administrative record suggesting that this is what happened. To the contrary, all the evidence in the record—including the laboratory and visible evidence that Kevin was suffering from advanced liver disease and William Rickelman's observations about his father's confusion, increased jaundice, and weakness in the days leading up to his fall—points to Kevin's organ failure as contributing to, if not directly causing, his collapse and subsequent death. Moreover, contrary to plaintiffs' suggestion, it is *their* burden to produce satisfactory proof that Kevin's death was covered under the policy, it is not Securian's burden to establish that it was not. *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005) ("Mr. Ruttenberg seeks to enforce benefits under the policy; he therefore bears the burden of proving his entitlement to contract benefits.").

Plaintiffs argue that even if Kevin's health conditions caused him to fall, it was the fall and not his health conditions that caused his death, and therefore AD&D benefits were payable under the Securian policies. In support, they cite *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818 (10th Cir. 2008), in which the Tenth Circuit held that a decedent's death was caused by a car crash (and therefore covered under his accident insurance policy), even though the crash itself was caused by physical illness (the decedent's seizure). But the accident insurance policy in *Kellogg* contained language different from that at issue here. Notably, MetLife's policy did not contain an exclusion for losses due to accidents that were caused by physical illness, but rather excludes only losses caused by physical illness. *Id.*, 549 F.3d at 832. As the Tenth Circuit noted, "MetLife could have drafted the policy to exclude losses resulting from accidents caused by injury or illness," but it didn't. *Id.*, at 832 n.5. Securian, by contrast, specifically drafted its

policy to exclude such losses. Contrary to plaintiffs' suggestion, this court has no authority to rewrite the terms of the parties' contract and make it say otherwise.

Finally, plaintiffs assert that Securian "speculates that [Kevin] fell because he was drunk," pointing out that the affidavits they presented on appeal contradict this conclusion. This argument is a straw man. Although Securian pointed out that Williams' affidavit was inconsistent with his report to medical staff that his father had been drinking a lot of alcohol around the time of his death, Securian did not deny benefits on the ground that Kevin had been drinking on the night that he fell. As Securian explained in its appeal denial letter, "Regardless of whether the insured had consumed alcohol immediately preceding his fall and death, all of the available evidence supports that his deteriorating health contributed to recurrent falls and symptoms that are known to cause them," and further, that his conditions contributed to his subdural hematoma by greatly increasing his risk of heavy bleeding. Dkt. 11, 589. As noted previously, this conclusion was adequately supported, if not compelled, by the record.

In sum, Securian's conclusion was neither arbitrary nor capricious. The opinions of Securian's two experts and the death certificate amply support the conclusion that Kevin's liver and kidney failure contributed to his accident, his subdural hematoma, and his ultimate death. No medical professional opined to the contrary. Denying plaintiffs' claim for accidental death benefits under these circumstances and on this record was reasonable and logical. Accordingly, Securian is entitled to judgment in its favor.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment, dkt. 12, is DENIED.

2. Defendant Securian Life Insurance Company's motion for summary judgment, dkt. 14, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 26th day of October, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge